Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3875 | **DATE** | 9/19/2001 |
| **CASE TITLE** | Abernathy et al vs. Frito-Lay, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** We grant summary judgment (Docs 8-1 & 11-1) to Frito-Lay on all counts. Because none of the facts that are the subject matter of the motion to strike play into our decision, Frito-Lay's motion (Doc 31-1) to strike is denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | Document Number |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | SEP 20 2001 date docketed | | |
| ✓ | Docketing to mail notices. | | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | | 39 |
| | Copy to judge/magistrate judge. | | | | |
| | SCT courtroom deputy's initials | 01 SEP 19 PM 12: 50 | date mailed notice | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DARRYL ABERNATHY and )
TRACY BURKINS, )
 )
        Plaintiffs )
 )
vs. ) 00 C 3875
 )
FRITO-LAY, INC., )
 )
        Defendant. )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on Defendant Frito-Lay's motions for summary judgment and their motion to strike certain portions of Plaintiffs' responses to their statement of facts. For the reasons set forth below, the motions for summary judgment are granted and the motion to strike is denied as moot.

### BACKGROUND

Plaintiffs Darryl Abernathy ("Abernathy") and Tracy Burkins ("Burkins") were Route Salespersons for Defendant Frito-Lay for ten and nine years, respectively. Their primary duties consisted of loading Frito-Lay products into trucks and delivering them to customers along a set route. Frito-Lay determined the time at which delivery trucks were to be loaded according to an employee's

seniority. Abernathy and Burkins' seniority levels were not high enough to allow them to load their trucks in the morning before they left on their route for the day. Rather, they were to load the trucks the afternoon before and leave the warehouse by 7:45 am to permit the warehouse personnel to conduct their activities for the day.

The events of their employment that are significant to the motions at issue began in January 28, 1999. That morning four trucks that should have been loaded the day before stood empty. The manager of the Frito-Lay business zone, Steve Rogers, identified the four order lists for the unloaded trucks. Each order list included a route number, from which Rogers was able to determine the drivers of the trucks that were not loaded on time. Abernathy and Burkins were among them. Each driver received a warning letter regarding this violation of the loading policy.

As a result of this disciplinary action, Abernathy and Burkins each filed charges with the E.E.O.C. on September 23, 1999. On September 30, the E.E.O.C. dismissed the charges because it was unable to conclude that the information Abernathy and Burkins supplied established violations of the applicable statutes. The parties received right-to-sue letters, informing them that they had 90 days in which to file suit in federal district court for the same alleged discrimination. It is undisputed that they did not do so; their complaint was filed on June 26, 2000.

On Friday, February 18, 2000, Abernathy and Burkins' direct supervisor, Juanita Phillips, received a call from a customer on Abernathy's route called LaUnion. LaUnion complained that Abernathy had not made a delivery to them the previous day, their regular service day. Phillips tried to page Abernathy before he returned to the warehouse, but he responded to none of her pages. When Abernathy returned to the warehouse, Phillips told him that he needed to go back out and service LaUnion. Abernathy said that he could not use the truck that he had been driving that day because the brakes were faulty and the defroster did not work. He also said that the weather was "like a blizzard." He also said that he could not go back out on his route because he was too sick and cold to do so. Phillips informed Abernathy that he could take another truck or he could make the delivery from his car. Abernathy responded that he would not transfer the goods from his truck to another truck and that his own car was too full to allow him to put the products in it. Phillips stated that he was under direct order to service LaUnion, and it was explained to him that if he did not go back out and service LaUnion, he would be suspended or terminated. Abernathy still refused to go back to his route, and he was suspended for three days. He claims that he thought that this suspension was actually a termination, even though he acknowledges receiving a memo that he was suspended and could be subject to termination. Abernathy did not return to work

after his suspension period elapsed. Larry Blaisdell, Phillips' supervisor, send a letter to Abernathy to the effect that if he did not return to work by March 3, his job would be considered abandoned and he would be terminated. Although Abernathy admits that he received and opened these letters before the deadline, he did not return to work. Frito-Lay terminated him on March 3.

Burkins' employment with Frito-Lay ended in a different manner. Two stores on Burkins' delivery route were owned by the same customer. This customer and his business made up a significant portion of the route. In January 2000, the customer refused to pay for products that Burkins had delivered. When contacted by Phillips regarding payment, the customer refused to let Frito-Lay service his stores and only agreed to continue the business relationship on the condition that Burkins would no longer make deliveries to his stores. This drop in sales volume required that Burkins be placed on a different route. Burkins filled in for other salespersons while he waited to bid for a permanent route. His first bid for a new route was successful. The new route was closer to his home, but further away from the Frito-Lay warehouse. Because of this change, Burkins' working hours per day increased from about 8.5 to 12. He claims that these longer hours along with increased stress and humiliation that he felt after the described events forced him to resign from Frito-Lay on April 25, 2000.

On June 26, 2000, Abernathy and Burkins commenced this suit against Frito-Lay, alleging racial discrimination and unlawful retaliation. Frito-Lay now seeks summary judgment on the entire complaint.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(c). The moving party bears the initial burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 312, 325, 106 S.Ct. 2548 (1986). The burden then shifts to the nonmoving party to show through specific evidence that a triable issue of fact remains on issues on which the nonmovant bears the burden of proof at trial. Id. The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence. Id.

## DISCUSSION

Abernathy and Burkins have provided no direct evidence of discrimination by Frito-Lay, so they must use the burden-shifting analysis first enumerated in McDonnell-Douglas Corp. v. Green. 411 U.S. 792 (1973). Under that method, the

- 5 -

plaintiff bears the initial burden of raising an inference of discrimination by establishing the elements of a prima facie case. Johnson v. Nordstrom, Inc., at *6. Once the inference is established, the burden shifts to the employer to articulate a legitimate business reason for the action taken against the employee. Id. If the employer does so, the burden shifts back to the employee to show that the reason the employer has cited is mere pretext. Id.

*1. The Discrimination Charge*

Abernathy and Burkins base their first claim for relief on the same events that formed the basis for their E.E.O.C. charge. They claim that the disciplinary actions taken against them in September 1999 were racially motivated and thus were in violation of Title VII. 42 U.S.C. § 2000e et seq. Before we can reach the merits of this claim, however, we must consider whether the complaint was filed in a timely fashion after the E.E.O.C. issued their right-to-sue letters.

Once the E.E.O.C. issues a party claiming discrimination a right-to-sue letter, that party has 90 days in which to bring suit in federal district court. 42 U.S.C. § 2000e-5(f)(1). It is undisputed in this case that Abernathy and Burkins filed their claims outside the 90-day limit. Their only argument that their case should nevertheless proceed is that they can avail themselves of the so-called "continuing violation" doctrine. Under this doctrine, a plaintiff in a discrimination suit can view

a series of acts as one continuous act that ends within the limitations period, thus allowing suit to be brought for events that would otherwise be outside the permissible time period. See Place v. Abbott Labs., 215 F.3d 803, 807 (7th Cir. 2000); Selan v. Kiley, 969 F.2d 560, 564 (7th Cir. 1992). However, the doctrine is not merely a back-door method of saving untimely claims; it applies in only three very narrow situations.[1] Place, 215 F.3d at 808. Specifically, the doctrine will not salvage a time-barred act that is "discrete in time and circumstances." Id.

The discrimination claims in this case arise out of a single, discrete event: the disciplinary action taken against Abernathy and Burkins in February 1999. Clearly this is not the kind of unusual circumstance that falls into the categories of situations that are addressed by the continuing violation doctrine. Therefore, we conclude that Abernathy and Burkins have filed outside of the allowable time period for their Title VII race discrimination claim, and we are precluded from examining that aspect of their action against Frito-Lay. We thus turn our attention to their claims of unlawful retaliation.

---

[1] These include situations in which decisionmaking processes take place over a long period of time, where the employer has a systematic policy that the plaintiff alleges is discriminatory, and where the employer's discriminatory conduct is so covert that its nature is not immediately apparent to the plaintiff. Place, 215 F.3d at 808.

*2. The Retaliation Charges*

Title VII prevents employers not only from engaging in discrimination but also from retaliating against employees who take action against unlawful employer behavior. 42 U.S.C. § 2000e-3(a). Abernathy and Burkins both contend that Frito-Lay unlawfully retaliated against them for filing their claims with the E.E.O.C. The test for retaliation is akin to the McDonnell-Douglas factors for discrimination. Hunt-Golliday v. Metropolitan Water Reclamation Dist. of Greater Chicago, 104 F.3d 1004, 1014 (7th Cir. 1997). To make out a prima facie case of retaliation, a plaintiff must show statutorily protected activity, such as filing an E.E.O.C. claim; adverse employment action; and a causal connection between the two. Eiland v. Trinity Hosp., 150 F.3d 747, 753 (7th Cir. 1998). If they make such a showing, the burden shifts to the employer to advance a legitimate business reason for the action taken. Hunt-Golliday, 104 F.3d at 1014. If the employer can produce such a reason, the burden then shifts back to the plaintiff to show that the employer's rationale is mere pretext. Id. Pretext means "whether the employer honestly believed its proferred reason for discharge." Essex v. UPS, 111 F.3d 1304, 1310 (7th Cir. 1997). Unless the plaintiff can show that the employer's reason was phony, the court must accept that the employer acted for the reasons they give. Russell v. Acme-Evans, 51 F.3d 64, 68 (7th Cir. 1995).

A causal connection means "more than mere speculation to support an inference that [a] protected activity and [an employer's] act are linked." Hunt-Golliday, 104 F.3d at 1014. The more remote in time the adverse employment action is from the protected action, the less likely that a plaintiff will be able to show a causal connection between them. Davidson v. Midelfort Clinic, Ltd., 133 F.3d 499, 511 (7th Cir. 1998)

*A. Abernathy's Retaliation Claims*

Although the formulation of the test for a retaliation claim ends with pretext, it will be the beginning of our examination. Frito-Lay had a legitimate business reason for terminating Abernathy's employment; Abernathy disobeyed a direct order from his supervisor and did not return to work after being told that his absence would be treated as job abandonment. Under the burden-shifting approach, Abernathy must show that this reason is mere pretext even if he can make out a prima facie case. If he cannot, it is irrelevant whether he can meet the other three elements. Essex, 111 F.3d at 1309. Abernathy claims that he can show pretext because he was asked to service a customer at a site where he had been held at gunpoint three years previously and because he had performed "heroically" in the face of inclement weather on the day that he was fired. Neither of these reasons is enough to show that Frito-Lay's proffered rationale is pretextual.

*B. Burkins' Retaliation Claim*

Unlike Abernathy, Burkins was not fired from his job, so he cannot immediately show an adverse employment action. His job ended through his own actions when he resigned nearly seven months after filing his E.E.O.C. claim. He therefore claims that his temporary assignment and ensuing route change either directly constitute adverse action or that they add up to a constructive discharge. Constructive discharge occurs when a plaintiff's employment conditions become "so intolerable that a reasonable person would have been compelled to resign." Chambers v. American Trans Air, Inc., 17 F.3d 998, 1005 (7th Cir. 1994).

Frito-Lay states that Burkins had to be placed on a different route because his sales volume without the business of the customer he lost would be impermissibly incongruous with those of other salespersons. Burkins was able to obtain another permanent route shortly after he was removed from his previous route, and we question whether the differences in working hours and other claimed adverse effects were intolerable enough to constitute constructive discharge. However, as stated above, we need not address these arguments because Burkins has not been able to establish that the grounds for Frito-Lay's actions were not legitimate business reasons but rather pretext to hide unlawful bases for taking the measures that they

did. Without some indication that Frito-Lay is hiding behind their story, Burkins' showing of the elements of a retaliation action is irrelevant.

*3. Motion to Strike*

Evidence that would constitute hearsay cannot be considered for the purposes of a summary judgment motion. Russell, 51 F.3d at 64. Both sides rely on evidence that would constitute hearsay in their statements of facts, and both have objected to its use by the other side. Because our conclusion is not based on any of the hearsay that the parties used in their facts, however, we need not address whether the material needs to be stricken, and the motion is therefore denied as moot.

## CONCLUSION

For the foregoing reasons, we grant summary judgment to Frito-Lay on all counts. Because none of the facts that are the subject matter of the motion to strike play into our decision, Frito-Lay's motion to strike is denied as moot.

*Charles P. Kocoras*
Charles P. Kocoras
United States District Judge

Dated:     September 19, 2001